UNITED STATES of America, Plaintiff,

v.

Charles DAVIS, Defendant.

Charles DAVIS, individually and on behalf of all others similarly situated, Third–Party Plaintiff,

v.

Jesse BROWN, Secretary of Veterans Affairs, Third–Party Defendant.

UNITED STATES of America, Plaintiff,

v.

Leonard H. REDINGER, Defendant.

Civ. A. Nos. 90–C–0067, 90–C–1112.

United States District Court,
E.D. Wisconsin.

March 17, 1993.

Christian R. Larsen, Asst. U.S. Atty., Milwaukee, WI, for plaintiffs.

Charles H. Barr, Milwaukee, WI and David A. Leen, Leen & Moore, Seattle, WA, for defendants.

### DECISION AND ORDER

REYNOLDS, Senior District Judge.

This class action involves veterans whose loans were guaranteed by the Veterans Administration ("VA") pursuant to a home loan guaranty program. On January 22, 1991, this court certified the following class:

> All veterans or widows of veterans or other individuals eligible for home loan guarantees or insurance provided pursuant

to Title 38, United States Code, Chapter 37, against whom a claim has been or will be made by the United States pursuant to either 38 C.F.R. § 36.4323(e) or a written indemnity agreement, which claim arose or will arise because of a claim paid by the United States to a lender which submitted such claim to the United States as a result of a foreclosure conducted in the State of Wisconsin, in which the lender elected and was permitted to waive deficiency and accelerate the redemption period pursuant to Wis.Stats. § 846.101 (1989), but excluding any claims based upon foreclosure of mortgages executed after December 31, 1989. (Jan. 22, 1991 Decision and Order at 21.)

## BACKGROUND

Wisconsin law controls the foreclosure procedures in this action. *See* 38 U.S.C. § 3720(a)(6). Pursuant to Wis.Stats. § 846.04, a lender may demand in a foreclosure complaint a judgment for deficiency following a foreclosure sale. When a foreclosure is sought under this statute, the debtor is given a twelve-month redemption period. Wis. Stats. § 846.10. Pursuant to Wis.Stats. § 846.101, a lender may waive judgment for deficiency in a foreclosure complaint. When a foreclosure is sought under this statute, the debtor is given a six-month redemption period.[1] All the lenders in this action foreclosed pursuant to § 846.101, thereby waiving the right to a deficiency judgment.

When the VA guarantees a loan, it must reimburse the lender for any losses when a veteran defaults. *See* 38 C.F.R. § 36.4321. The lenders in this action received reimbursements from the VA for deficiencies remaining after foreclosure.

On January 22, 1991, this court enjoined the VA from collection on its indemnification claims and ordered the VA to refund money it had previously collected for indemnification.[2] On April 3, 1992, the Seventh Circuit reversed the injunction, holding that the VA has a right to indemnification for guaranties paid to lenders which had foreclosed pursuant to § 846.101. 961 F.2d 603.

This action was remanded to determine which class members are relieved of liability based on *United States v. Church,* 736 F.Supp. 1494 (N.D.Ind.1990). The court in *Church* held that when lenders do not follow the VA's foreclosure instructions, any payments by the VA to these lenders are gratuitous and therefore do not entitle the VA to indemnification. This court's task, therefore, is to determine what foreclosure instructions were given by the VA, and which lenders did and did not follow these instructions. Presently before the court are the parties' cross-motions for summary judgment.[3] On February 24, 1993, the court heard oral argument on the motions.

## FACTS

### The VA Acknowledgment Letter

The VA routinely sent a form acknowledgement letter to lenders after it was notified that a lender was planning to foreclose. All lenders in this action received this letter, which stated in part "[i]n proceeding with such action, you should protect your rights against those liable, so as to protect our [the VA's] subrogated rights."[4] The parties have argued about what this means, but I think it's quite clear that it means that the lenders could not foreclose pursuant to § 846.101, which destroys the VA's subrogation rights with respect to obtaining a deficiency judgment. If this were the end of the inquiry, then it would follow that the VA's payments to the lenders were gratuitous, but the fact is that there was an additional course of dealing between the VA and the lenders.

---

1. The VA may also permit a lender to accept a voluntary deed in lieu of foreclosure, whereby the lender receives the property's title and the veteran's personal liability is released. Prior to 1983, a lender could also foreclose by advertisement.

2. The VA does not seek reimbursement from defaulting vets for loans closed after December 31, 1989. (Sept. 9, 1992 Bitters Aff. ¶ 4.)

3. Leonard H. Redinger, the defendant in Civil Action No. 90–C–1112, has not made an appearance. For purposes of finality, this court will include Redinger in the class's motion.

4. Examples of the letter are attached to the Sept. 9, 1992 Hurley Aff. at Ex. 1.

*Course of Dealing*

In the course of dealing between the VA and the lenders after 1983, the VA staff knowingly permitted Wisconsin lenders to foreclose pursuant to § 846.101, in order to reduce additional expenses which came with the longer redemption period than with foreclosures pursuant to § 846.04.

Tom Bitters, who has worked for the Wisconsin VA Office of District Counsel since 1968, and has been involved in loan guaranty matters since 1975, states that after the provisions for foreclosure by advertisement were repealed in November 1983, most of the Wisconsin lenders foreclosed pursuant to § 846.-101. (Sept. 9, 1992 Bitters Aff. ¶ 3; *see also* Sept. 2, 1992 Childs Aff.[5] ¶ 3.) Between Oct. 1985 and April 1989, 1170 loans were foreclosed pursuant to § 846.101, 442 voluntary deeds in lieu of foreclosure were accepted, and there were no foreclosures pursuant to § 846.04. (Sept. 9, 1992 Hurley Aff.[6] ¶ 7.) Bitters does not know of any time when the VA has instructed a lender to seek a deficiency judgment. (Bitters Aff. ¶ 5; *see also* Hurley Aff. ¶ 5: "It has never been the policy of the Loan Guaranty Division to instruct lenders to effect foreclosure pursuant to Wis. Stats. §§ 846.04 & 846.10 and take deficiency judgments"; Sept. 4, 1992 Wojculis Aff.[7] ¶ 2: recalls no instruction to foreclose pursuant to § 846.04; Childs Aff. ¶ 5: recalls only one instance of instructing a lender to foreclose pursuant to the twelve-month procedure.)

Bitters has advised lenders that it was not necessary for them to foreclose pursuant to § 846.04 and seek a deficiency judgment, and that the VA preferred foreclosure pursuant to § 846.101. (Bitters Aff. ¶ 5.) Additionally, because lenders were obligated to keep the VA informed of the pleadings in foreclosure actions pursuant to 38 C.F.R. § 36.-4319(a), the VA knew that lenders were foreclosing pursuant to § 846.101.

Since 1980, the majority of VA guaranteed loans in Wisconsin have been terminated by attorneys Terry Gray, Robert Johnson, and Robert Hersh. (Bitters Aff. ¶ 15.) Gray was never instructed by the VA to foreclose in any particular manner, and has essentially used § 846.101 for the past nine years; he has never been instructed to take a deficiency judgment.[8] (Aug. 31, 1992 Gray Aff. ¶ 3–5.) Johnson has never foreclosed pursuant § 846.04, and the VA has never objected. (Sept. 1, 1992 Johnson Aff. ¶ 3.) Hersh has always instructed lenders to foreclose pursuant to § 846.101, and he understood that the VA had no objection; Bitters advised him that there was no necessity to take a deficiency judgment to preserve the VA's indemnification rights. (Aug. 31, 1992 Hersh Aff. ¶¶ 2–3.)

*The Relationship Between the VA and the Veterans*

The veterans knew that any foreclosure proceedings would be brought pursuant to § 846.101. Paragraph 18 of the VA's mortgage form states "The Mortgagor [the veteran] agrees that in the event of foreclosure of this mortgage he will be bound by the provisions of Section 846.101 of the Wisconsin statutes." (Bitters Aff., Ex. 11.) Second, the application for a home loan guaranty, signed by the veteran, states that "... you will not be relieved from liability to repay any guaranty claim which the VA may be required to pay your lender on account of default in your loan payments. The amount of any such claim payment will be a debt owed by you to the Federal Government." (Ex. 200, admitted at oral argument.) And, third, the VA routinely notified the veterans

---

5. Childs began working in the Zablocki VA Loan Guaranty Division in 1967; she was the Chief of Loan Service & Claims from Jan. 1982 to Oct. 1988. She currently holds the same position in Denver.

6. Hurley has worked in the Zablocki VA Regional Office Loan Guaranty Division since 1976.

7. Wojculis has worked in the Zablocki VA Loan Guaranty Division since 1978. Since 1981, she has been a Loan Service Representative.

8. Gray sent Bitters a letter dated July 29, 1986 which stated "[u]nless you instruct us to the contrary on a specific case, we will waive your right to a deficiency judgment against the defendants in order to obtain the shortest possible redemption period under Wisconsin law. As you know, the VA and the FHA do not object to such a waiver in Wisconsin." (Aug. 31, 1992 Gray Aff., Ex. 1.)

that even though the lender may not hold the veteran liable for a deficiency, the veteran may be liable to the VA for any money it pays regarding the loan guarantee. (Bitters Aff. ¶ 11, Ex. 13.)

## ANALYSIS

The factual record on summary judgment consists only of sworn testimony based upon personal knowledge; conclusory allegations, whether contained in pleadings or set forth in affidavits, are excluded. Fed.R.Civ.P. 56(e); Fed.R.Evid. 602; *Koclanakis v. Merrimack Mut. Fire Ins. Co.,* 899 F.2d 673, 675 (7th Cir.1990). The parties have filed cross-motions for summary judgment thereby agreeing that the issue of whether the lenders followed the VA's instructions may be resolved at this stage of the proceedings. This court must initially determine what those instructions were. The instructions are contained in a written acknowledgment letter and in the course of dealing between the VA and the lenders.

Given the above set of facts, it appears that on the one hand the VA habitually sent out the acknowledgement letter but on the other hand engaged in a course of conduct in which it knew and acquiesced, if not verbally directed, the lenders to foreclose pursuant to § 846.101. It is true that the VA did not specifically "direct" the lenders in writing to foreclose pursuant to § 846.101, which the class argues is required by 38 C.F.R. § 36.-4324(f):

> The release of the personal liability of any obligor [i.e., veteran] on a guaranteed or insured obligation resultant from the act or omission of any holder [lender] without the prior *approval* of the Secretary shall release the obligation of the Secretary as guarantor or insurer, except when such act or omission consists of . . . an election and appropriate prosecution of legally available effective remedies with respect to the repossession or the liquidation of the security in any case, irrespective of the identity

or the survival of the original or of any subsequent debtor, if holder [lender] shall have given such notice as required by § 36.4317 [9] of this part and if, after receiving such notice, the Secretary shall have failed to notify the holder within 15 days [10] to proceed in such manner as to effectively preserve the personal liability of the parties liable. . . .

(emphasis added.)

The VA, however, not only knew that the lenders were foreclosing pursuant to § 846.-101, but encouraged them to do so. Not only did the VA verbally instruct lenders to foreclose pursuant to § 846.101, but the VA provided mortgage forms to the lenders which state in paragraph 18 that "the Mortgagor [the veteran] agrees that in the event of foreclosure of this mortgage he will be bound by the provisions of Section 846.101 of the Wisconsin statutes." (Bitters Aff., Ex. 11.) The class does not cite any relevant authority regarding why this understanding between the VA and the lenders does not constitute "approval of the Secretary."

### Effect of the Church Decision

In *Church,* the same letter was sent out that was used in this case. However, the *Church* court does not discuss or even mention this letter. Additionally, the court did not consider the course of dealing that is before this court. Further, the *Church* court states that after the VA accepted a forbearance agreement which averted the foreclosure, the VA "renewed its demand to preserve Church's personal liability if foreclosure became necessary." *Id.* at 1496. And, "[t]he Wisconsin VA [the lender] chose not to pursue a deficiency judgment after the VA had requested that it do so." *Id.* at 1499. The *Church* court did not unequivocally hold that the form letter alone was an instruction which the lender did not follow, thereby releasing the VA from any liability to make payments for a deficiency following foreclosure.

---

**9.** Pursuant to 38 C.F.R. § 36.4317, a lender must give the VA thirty days notice of its intent to foreclose.

**10.** The VA's instruction is timely as long as the lender receives notice before the lender has re-

leased the debtor. *Western Securities Co. v. Derwinski,* 937 F.2d 1276, 1281–1282 (7th Cir.1991). In Wisconsin, the debtor is not released until the foreclosure action is commenced. *See* Wis.Stats. § 846.101(1).

*Church,* therefore, does not direct this court to conclude that the payments from the VA to the lenders in this action were gratuitous. This court finds that the lenders followed the VA's foreclosure instructions. The VA therefore has a right to indemnification for the guaranties it paid to the lenders.

IT IS THEREFORE ORDERED that the Third–Party Plaintiff's August 11, 1992 motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that plaintiff United States of America and Third–Party Defendant Jesse Brown's September 10, 1992 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that on or before twenty days from the date of this order, plaintiff United States of America shall file and serve a memorandum and any necessary supporting affidavit(s) regarding the amount of judgment to be entered against defendants Charles Davis and Leonard H. Redinger.

IT IS FURTHER ORDERED that on or before twenty days from receipt of plaintiff's memorandum, defendants Charles Davis and Leonard H. Redinger shall file and serve a response.